Let the lawyers come around. It takes some time to get settled. Mr. Cagle, step forward when you're ready, sir. I'm ready, Your Honor. May it please the Court. Ladies and gentlemen of the Court, my name is Jim Cagle. Of course, I represent Mr. Spurlock. Mr. Spurlock is here questioning a search inside his home without a warrant, inside his bedroom in that home without a warrant, inside the closet of that bedroom, and also a safe which was inside the closet, all of which was done without a search warrant. Let me interrupt you for a second. Did you reserve any time? Are you going to get back up? I just want to be sure I know. I thought I did initially, but I may have erred earlier today because the gentleman asked me about my 20 minutes. You have 20 minutes. I have him down as going first and fourth. I just want to be sure, Joe, we're straight on this. I just want to be sure. Do you see what I mean? I just want to be sure. Do you want some rebuttal time? Yeah, about two minutes rebuttal time ought to do it. Thank you very much. Thank you, Your Honor. In any event, Your Honor, the case is focused on what is the domestic relations law, the provision of domestic relations, of violence, rather, and within the context of domestic relations in West Virginia code. What has actually occurred in this case, and I submit could well occur, and I submit does occur frequently, is that searches inside of people's homes are done without a warrant on a routine basis. In this case, the core facts uncontested are as follows. The officer who did the search ultimately meets with my client who comes in on his own, having heard that there was a domestic violence petition out on him. He meets with the officer. The officer already has in his notes that there exists a revolver with an obliterated serial number on it. He knows that before my client gets there. That officer testified at my motion to suppress that he determined that the information that he had, and this is the officer's words, correctly was too stale, i.e., about a year old, so that he, the officer, could not get a search warrant, which he, the officer, believed would be necessary in order to search and seize this weapon that he had already been told about. But didn't the officers on the day in question have a court order? They had a court order for the domestic violence. Right. Didn't that court order indicate that he was to surrender his weapon? That's exactly right. It did, and that, of course, is really the nub of my argument. As we know. And how do you get around that?  Well, because the reason for the surrender of those weapons would be civil in nature, not to become a criminal case as it did in this case. I cite in my brief cases from state jurisdictions. I'm not sure I understand your argument. Your argument is your client did, in fact, have to turn over those weapons. He acquiesced to an order. Whether or not. . . Just let me say this. Okay. The order said you have to turn it over. It's civil, and the officer said to him, this is civil. Correct. But the information you learned then after somebody complies with the civil order cannot be used for criminal prosecution? Well, that would be the question. And what I was about to refer to were cases out of Hawaii, Pennsylvania, New Jersey. Apparently, New Jersey has a lot of domestic violence. But in any event, it has a rather rich line of cases on this subject. In that state, they make a distinction, and they require a higher standard. Don't we have plain view? I was thinking about a context outside of domestic relations. Let's make it broader than that. You have plain view doctrine that if an officer is somewhere illegally, he can see conduct. If he sees conduct of contraband, that can be used to prosecute somebody. Plain view certainly exists. It does not apply to these facts. He opened a safe, Your Honor. There would be no view whatsoever without opening the closet in the safe. But your client didn't object to that. Your client did that as a result of the court order. He did that because he acquiesced to that which he was being told, which was deficient in this regard to begin with. It was not a search warrant. Rather, it was an order in a civil matter for him to turn over any weapons or ammunition. So just like Judge Shedd says, he turns them over pursuant to this order, and you look down and you see this obliterated serial number. What was the officer supposed to do with that information? Ignore it? Well, that's what he was looking for to begin with. He had been told about that, the officer had, by the brother of the accuser before he ever went there. Are you suggesting that the situation would be different if he hadn't been told about it? I suggest that it may well be viewed differently, yes. I do. If he hadn't been told. That's right. But here's the issue. Okay, so he's been told. So he's picking up these weapons, and there it is. What is he supposed to do with that information? Well, I don't think he can prosecute him on that information. That's my point, because he had not received a search warrant. Rather, he had a civil order, and that civil order is being used to evade the warrant requirement of the Fourth Amendment of the Constitution. You would say that, based on what you asserted, that a good faith exception wouldn't apply in this case? I think it does not apply. Even though you indicated that the information was stale? That was the officer's testimony. I happen to agree with his view. He said it was about a year old, that information, and he felt that he, the officer, testified that I believe that that was stale. Those were his words, and it was. It was old information. Absolutely. But to follow up on Judge Shedd's question, they followed Mr. Spurlock to his house. Obviously, he let him in. They had an order and had a right to be there. So he opens the safe. So where is the constitutional violation? When he takes the guns out, hands them over, they're in plain view as an obliterated serial number. Well, I don't think plain view applies there because he had to open the safe. That's my distinction there. But certainly, he could see it, but he already knew it. No, no, no. You would be wrong about that. Plain view applies anywhere where an officer is and he is legally entitled to be. So he's entitled to be there. This case doesn't turn on plain view necessarily, but I think in response to your argument, you seem to be undercutting the doctrine of plain view because it had nothing to do with whatever rationale, I think, or distinction you're trying to draw. But just following up on the question from Judge Floyd, if they had a right to be there, they had an order for him to open the safe and get the guns, which he did. Once they then present the guns, they're standing there and they have a plain view. It's in plain view of the weapons that they can then see what's on the weapons, can't they? Judge Biggs is asking the same question we're all asking. What's wrong with that? Well, because the first one thing you did say is not factually accurate. The order does not tell him to open a safe. I didn't say that. It did. I didn't say that. Turn over the weapon. I thought I heard that. Just turn over the weapons. It says you're to give the weapons to the officer serving this order. It does say that. No question that says that. And to comply with that order, in this factual scenario, he had to open the safe. But that was his. He opened the safe, didn't he? He did. He either did or he gave him the combination. Would it be a different scenario on that gun that the officer received that he said the barrel, this might be the length such that that gun was illegal? Would that be different? How would that be? Is that different from the gun with the obliterated serial number? Since you say that it makes a difference because the officer knew about that beforehand, would that make a difference with that sawed-off shotgun that he found? I think it might, Your Honor. I think it might. You seem to be suggesting that there's somehow something improper. I'm not saying it's not. I'm trying to understand you. That this officer knew about the obliterated serial number weapon. Yes. Is there some suggestion that he got the woman to file the petition with the court to get the order he then used to get the weapon? I'm not suggesting that. She had come to the courthouse before on her own. I can't suggest that. Why does that matter? Why does that matter? Because the Fourth Amendment matters. Because a search inside a— The Fourth Amendment matters, but you have to explain to me how that matters under any law or decision under the Fourth Circuit, I mean the Fourth Amendment. How does it matter? She had a valid domestic—I don't know about that, but she got a judge to enter some order that she was to be protected and that he was to turn over his weapons. An officer just takes that valid order of the court, takes it to him, and he supplies the weapons as he is required to do so. What's wrong with that scenario? Well, that gets into my void issue. Okay. Because that order, that order in reality, and if you've been—I understand Boyd is 1886, and we kind of look at that as scant, but that order actually converted Mr. Spurlock into being a witness against himself, supplying all of the evidence that would be needed to prosecute him for a crime, in this case, crime of possessing an illegal firearm or firearms. He becomes his own witness by virtue of an order entered by a magistrate in Boone County, West Virginia. It says, you, Mr. Spurlock, now become a participant. Give us your weapons. Give us the ammunition. And in fact, cooperate with us so that we can then prosecute you. Now, that's not just a Fourth Amendment issue. That's a Fifth Amendment issue. I know, but is that compulsion, the type of compulsion that's recognized under the Fifth Amendment? An officer tells you to do something, you comply with it? That's not compulsion under the Fifth Amendment. Well, in Boyd it was. Is it? In Boyd it was. In Boyd it was a court order. It was more than—I mean, well, perhaps this is a court order too. This was actually a federal court order in Boyd, and the U.S. Supreme Court says that violated the Fifth Amendment of Mr. Boyd. He had to turn over his papers that then were used to prosecute him for a customs law violation. Again, the context is 1886, but I submit to this court there's little or no difference between that setting. Do you think your better argument is the Fifth Amendment or the Fourth Amendment? No, I think my better argument—I don't want to evaluate my arguments or concede it was the other. I didn't ask you to, though. I prefer not to. I'm sorry. Yeah, I think each of those amendments is important. Each amendment is important, but I was asking that for the purpose so that maybe we could focus a lot of our effort on what you think is your best argument. But you don't have to answer that question. I'll ask the other side which they think is the weaker. Well, that's fair. They think both of them are weak, but that's part of their job. On the Fifth Amendment argument, wouldn't he have to have invoked his rights in some way, and then you got the compulsion behind that on a Fifth Amendment violation? You might if one is apprised of one's rights, which he was not. But he didn't invoke it at all, even at trial. I'm sorry? He didn't invoke it at any time. No. No, he didn't. He was compliant. No question about it. I consider that acquiescence. So how is that preserved for us to consider today? How is that issue preserved? Well, I don't think he consented. And, ergo, the issue is there because I submit that what he did was acquiesce to the power of the state, which he did. His alternatives were to say, no, I won't go. I won't talk to you. You can't go into my house. And then they would have to get warrants, in this case a search warrant. Why isn't the good faith exception allowed in this case over those weapons because the officer went in with that court order? Why doesn't that create a good faith exception? It doesn't matter what the officer thought himself, but that's an objective standard. Why isn't an officer going in with a court order saying this is what the court order is and you agree to what it says? You have to turn over your weapons. Why isn't he protected in taking the weapons as to the Fourth Amendment violation? Not he protected, but why doesn't that evidence come in despite any substantive claim of a Fourth Amendment violation? Leave that aside. Why isn't that just a good faith exception? There will be no exclusion. It's not a good faith exception in accord with any precedent that I found in response to this court's request that we submit. I'm shocked that you would think that telling someone they have to comply with a court order wouldn't be done in good faith. Is there any better example of good faith than that? If you were using it, it goes back to what I originally said. If you were using that to take the firearms and hold them until the end of the proceeding, if the end of the proceeding is adverse to the accused, then, of course, the weapons would be destroyed or whatever else. It has nothing to do with the taking of the weapons, though. It's a good faith exception that judges the conduct of the officer at the time he undertakes the act that you think is improper. You think taking those weapons was improper? Your Honor, let me go back to the record. This officer testified that he did not believe that he could search and seize these weapons. He didn't testify that the court order didn't give him permission. He testified that he relied entirely on my clients having said that he would comply with the court order. But he didn't. Let me also say to you, in judging the good faith exception, it's an objective standard. It's not a subjective standard. It's an objective standard. So we look at whether or not the evidence should be excluded. We look at whether or not an objective officer at that point would think what he did was proper. He had a court order saying you're entitled to get his weapons. And that's what he did. Why in the world is that not just a definition of good faith? Well, because in this case, the officer said that he didn't believe that he could take the order, he could use the order to take the weapons if my client had denied by saying I don't have weapons. In fact, that was his testimony. And my client said, no, I don't have weapons. He, the officer, testified at the hearing that I, the officer, could not take those weapons absent a search warrant. But it doesn't matter first subjectively what the officer thought, and it has nothing to do with the fact of we have to look at what happened in this case. Your client didn't say I don't have the weapons. He said I got them right here. And the officer took them pursuant to the court order. I'll let you think about it. You reserve some time. You reserve some time. We'll get back to you. Thank you very much. Thank you, sir. Thank you. Ms. Harrell, I think you're next up. Glad to see you. May it please the Court. My name is Jennifer Rada Harrell, and I'm Assistant United States Attorney in the Southern District of West Virginia. The district court's denial of defendant's motion to suppress should be affirmed. As an initial matter, and this was just discussed, the good faith exception, this is a perfect example of an officer relying properly on good faith. Good faith is when police act in an objectively reasonable manner, and the deterrent effect of exclusion is undermined, and therefore evidence should not be excluded. Can it be any more good faith than to have a court order in your hand on which you basically read to the defendant to say you've got to give me your weapons? I don't believe there is a better example than this. This is not a search warrant is the classic example, but in a search warrant the officer has at least had some input in this. This is a court order that was issued in a civil matter, which law enforcement had no involvement with the obtaining of this order. What about any concern that the Virginia statutes that authorized that order might be unconstitutional? As a primary matter, the United States does not believe that those laws are unconstitutional, but specifically for this case, the court does not need to address or turn to the constitutionality. If there is a reasonable grounds that is narrower that the court can make a determination on, that is . . . No, I'm talking about on the good faith exception on how the officer was conducting himself. What if he has an order signed by a judge pursuant to a state statute that might be unconstitutional? Well, at the time that that was issued and at the time that this officer relied on that court order, that law was constitutional. It was considered to be proper law. You're just saying there was no basis for this officer to know and take it upon himself to decide what laws are constitutional and unconstitutional? Correct, Your Honor. Okay. Much like with reliance on a statute, if that statute is later determined to be unconstitutional, an officer's good faith reliance on the statute at the time . . . Did you argue consent in this case? Consent was brought up after the initial motions. You want to argue it now or you don't want to argue consent? You're talking about her consent as the cohabitor. Yeah, consent was the basis of the district court's ruling and the United States . . . I think good faith is the first and foremost way to address that. Okay. Although the United States does believe that her consent also would have provided the basis for the district court's proper ruling. What about the Fifth Amendment argument? As far as the Fifth Amendment, the initial motion to suppress addressed specifically just suppressing the firearms. Firearms are physical evidence. Those are non-testimonial. Sometimes physical evidence can be testimonial, can't it? In certain cases, the firearms themselves in this case would not be testimonial. The act of producing the firearms could arguably be testimonial. And the district court expanded the defendant's argument to include that. However, the United States does not believe that Fifth Amendment applies even to the act of production in this case. Presuming that it does, can you still win the case? Presuming that this is testimonial evidence, if we just accept for the purpose of this question that the production of the weapons could be seen as testimonial, does the government still win? Yes, Your Honor. Why? The production was not compelled under the Fifth Amendment. There was . . . What about that order? That didn't compel? Well, the order is a civil order, and there was . . . For the Fifth Amendment to apply in this context, there has to be an invocation of the Fifth Amendment. This is not a self-realizing right in this context. And the defendant at no point invoked his Fifth Amendment rights or objected in any form. Therefore, there was no compulsion of the government over the . . . You think the defendant would have had to do something like, the court order says give you my weapons, but I don't really . . . I'm not going to tell you why, but I don't want to give them to you. Might that have raised a Fifth Amendment issue in your mind? That could have possibly at least gotten closer to a valid Fifth Amendment objection. But only if it was testimonial. Correct. Only if we . . . I haven't assumed that. I haven't assumed that far with this. So that then you would say, if the officer says, I don't care what you think, buddy. I'm the law. Give me those guns, or I'm going to lock you up right now. That then you think might be the kind of compulsion we would look to for a Fifth Amendment violation. It's a compulsion beyond the noncompliance with the order. Correct. It's a valid objection, and then . . . Some kind of objection. We'd have to see about what we'd call valid, but some kind of objection to the order. Then that, which you say was not present here, correct? Correct. Plus some kind of force beyond the initial court order to push you to do what you have in some way objected to. Yes, Your Honor. Okay. That's the kind of compulsion that's required under the Fifth Amendment, and that is simply not present here. You've made these arguments in your brief. Anything else you want to say? Nothing further, Your Honor. All right. Thank you very much. Thank you. Mr. Ritchie? May it please the Court. My name is Zach Ritchie, and I'm here on behalf of the State of West Virginia, which intervened below to defend the constitutionality of state domestic violence law. I'll be brief. The district court . . . this court should affirm the district court and decline to address the constitutionality of state domestic violence law under the well-settled principles of avoidance. And for this court to actually reach a constitutional discussion of state law would be difficult in this case for several reasons. First, Your Honor, this court would need to decide whether an appellant is in fact asserting a challenge to the initial search and seizure, or rather the subsequent use, the propriety of the use of those weapons in this proceeding. And the state believes that what the appellant is arguing is that second, is the latter, in which case I would immediately turn to the questions that both Judge Shedd and Judge Biggs raised, asking whether the weapons, once they were seized pursuant to the civil order, was it immediately apparent that they were potentially illegal? And in this case, they were. It's a little unclear to me exactly how that argument is raised, but it seems to me that there is at least some discussion to be had at some point about the statutes as they relate to the initial receiving. I don't know if it's a search and a seizure. I think it is receiving the weapons. And you, what about looking at it there? Although I'm not quite clear the other side is arguing that. I think that's right, Judge Shedd. I'm not sure they are arguing that, but I think in this case when we look first at the procurement of the order when the petition was filed, at that point there were no officers involved. There was no evidence of any sort of attempt to use the civil proceedings. It would just be that the statutes themselves allow for these kind of orders. That would be the constitutionality. Right. I'm not questioning it, I understand. I'm just, if there's an issue here, maybe that's where the issue arises. It may be, and in this case we just again assert that we don't think the court needs to get into that. But if we did look . . . I think the government answered it to my satisfaction, and they say, they think it's constitutional, so they defended it as well, because she has to go home to West Virginia too. We appreciate it. Yeah, they think that it's constitutional, but she says in a real sense it doesn't particularly matter where some court decision might come out on that if it's properly challenged, because at least for purposes of good faith in this situation as to getting those weapons, that officer is not required to look at the statute and decide for himself it's unconstitutional in this circumstance, and therefore say I can't follow the court order, correct? The state agrees entirely with that, Your Honor. Do you think they raised the constitutionality in some other way? I don't think so, Your Honor. I don't think the court needs to address it. It's just within the scope of the state's interest. The district court also wasn't sure how it was being raised, but wanted to invite the Attorney General to participate in any event. Thank you very much. We appreciate you being with us. Thank you, Your Honor. Next time you come, we'll try to have a lot more questions for you. I appreciate it. Mr. Cagle, sir, you saved two minutes. Glad to hear from you. Thank you very much. I appreciate your allowing me these two minutes. The good faith exception, I submit, does not apply because the cases don't address this situation, and never have, and so that if you were to determine that good faith is the correct basis for a decision that denies Mr. Spurlock's appeal, then I submit you would be going further than any precedent now existing in this circuit or in the U.S. Supreme Court. And what you would be doing, I submit, would be creating a situation in which an order in a civil matter, or I submit more likely a quasi-criminal matter I think is a more apt description, but an order in a non-traditional criminal case would trump the Constitution, and in this instance would undercut two amendments of the United States Constitution. And I think that's a slippery slope that we want to protect women or men who are victims of abuse. Nobody can argue sanely against that. But in legislating as we do, we create a situation in which we simply put aside any concerns about the sanctity of a person's home and the right of state agents to go in that home and conduct investigations that turn out to be criminal in nature versus civil in nature. So thank you very much. Thank you very much. Thank you. We will adjourn court and step down and greet counsel. This order of course stands adjourned. Senator Diodati of the United States and his Honorable Court.
judges: Dennis W. Shedd, Henry F. Floyd, Loretta Copeland Biggs